# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01339-NYW

ROY MEDINA,

      Plaintiff,

v.

NANCY A. BERRYHILL,[1]

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

      This civil action arises under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401–33 and 1381–83(c) for review of the Commissioner of Social Security's ("Commissioner" or "Defendant") final decision denying Plaintiff Roy Medina's ("Plaintiff" or "Mr. Medina") application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to the Order of Reference dated May 4, 2017 [#24],[2] this civil action was referred to this Magistrate Judge for a decision on the merits. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. After carefully considering Plaintiff's Opening Brief

---

[1] This action was originally filed against Carolyn Colvin, as Commissioner of the Social Security Administration. Commissioner Berryhill succeeded Commissioner Colvin as Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, this court automatically substitutes Acting Commissioner Berryhill as Defendant in this matter.

[2] For consistency and ease of reference, this Order utilizes the docket number assigned by the Electronic Court Filing ("ECF") system for its citations to the court file, using the convention [#___]. For the Administrative Record, the court refers to ECF docket number, but the page number associated with the Record, which is found in the bottom right-hand corner of the page. For documents outside of the Administrative Record, the court refers to the ECF docket number and the page number assigned in the top header by the ECF system.

[#13] and Defendant's Response Brief [#14], the entire case file, the Administrative Record, and the applicable case law, this court respectfully AFFIRMS the Commissioner's decision.

## PROCEDURAL HISTORY

This case arises from Plaintiff's applications for DIB and SSI protectively filed on or about January 30, 2013.[3]  [#10-2 at 11; #10-3 at 46–47; #10-5 at 113, 120].  Mr. Medina dropped out of high school in the eleventh grade; he never received his General Education Diploma ("GED"), and took special education classes.  *See* [#10-2 at 33; #10-3 at 52, 65].  Plaintiff alleges that he became disabled on January 20, 2011, due to arthritis in his hands and knees, a "bad back and feet," sleep apnea, head injuries, memory problems/cognitive issues, and learning disabilities.  *See* [#10-2 at 11; #10-6 at 142, 147].  Mr. Medina was forty-eight at the date of onset of his claimed disability.

The Colorado Department of Human Services denied Plaintiff's applications administratively on August 27, 2013.  *See* [#10-2 at 11; #10-3 at 46-47, 59, 72; #10-4 at 74].  Mr. Medina timely filed a request for a hearing before an Administrative Law Judge ("ALJ") on September 16, 2013.  *See* [#10-4 at 80].  ALJ Earl W. Shaffer (the "ALJ") held a hearing on August 6, 2014.  [#10-2 at 11, 25; #10-4 at 88].  At the hearing, Mr. Medina proceeded through counsel, and the ALJ received testimony from Plaintiff and Vocation Expert ("VE") Martin Rauer.  *See* [#10-2 at 11, 28, 40].

During the August 6 hearing, Plaintiff testified that he currently resides with a friend because his back issues prohibit him from working.  [#10-2 at 28].  Plaintiff stated that he last worked in or around 2010, "doing concrete work, laborer, [and] construction" with his stepdad.  [*Id.* at 31].  However, Plaintiff's back and knee issues, as well as his head injury, prohibited him

---

[3]  The Application Summaries for Disability Insurance Benefits and Supplemental Security Income list a date of February 21, 2013, instead of January 30, 2013 [#10-5 at 113, 120], but the date of application used by the ALJ in the operative decision is January 30, 2013 [#10-2 at 11].

for working any longer. [*Id.*]. Mr. Medina also testified that, until approximately 40 days prior to the hearing, he was an alcoholic—drinking approximately "20 beers a day;" however, Plaintiff did not attribute his alcoholism to his inability to work. [*Id.* at 30, 31-32].

Plaintiff attempted three-days of work in or around 2012, but he had to cease working because of his back, and even had to go the hospital for his pain. [*Id.* at 32]. When asked what causes him the "most trouble day to day," Plaintiff testified that it was his back and knee problems. [*Id.* at 33]. Plaintiff explained that he had a pinched nerve in his back, causing pain in his back and down his legs, but that his doctor did not want to perform surgery. [*Id.* at 33-34].

Mr. Medina also testified that he experienced headaches once every two to three days, caused by a past head injury. [*Id.* at 34]. Plaintiff stated that the headaches last approximately 20-30 minutes, and that he must lay down with a wet rag on his forehead to alleviate his discomfort—he cannot be upright during a headache. [*Id.* at 35].

Regarding his physical limitations, Plaintiff testified that he could lift only 10 pounds before his back and knees began to hurt. [*Id.*]. Plaintiff also testified that he could only be on his feet (*i.e.*, walking or standing) for 20 minutes, because he stumbles when he walks and standing causes pain. [*Id.* at 36]. Similarly, Plaintiff can sit for only 20 minutes before having to stand due to pain. [*Id.*]. In addition, Plaintiff testified that he had difficulties bending at the waist, stooping, squatting, and crouching because of his back and knees. [*Id.*].

For his pain, Plaintiff testified that he takes Percocet every 6 hours, every day of the week, and that this helps ease the pain somewhat. [*Id.* at 37]. Plaintiff also uses other conservative methods of treatment, including ice and heat, and some physical therapy for his pain. [*Id.* at 37-38]. Plaintiff testified that his treating physician is Dr. Christine Connolly. [*Id.* at 38].

Regarding his cognitive functionality, Plaintiff testified that he has memory problems and forgets names and addresses. [*Id.*]. Further, Plaintiff testified that he has difficulties comprehending things he reads, that his mother reads things to him because he does not understand them, and that he has issues with concentration. [*Id.* at 39-40]. Plaintiff stated that he consistently struggled with comprehending things since he was young, but attributes his worsening cognitive issues to a head injury he sustained in or around 1997. [*Id.*].

A VE also testified at the hearing. The VE testified that Plaintiff's past work included a construction worker, a specific vocational preparation ("SVP")[4] level 4 heavy exertion job; a lunch cook,[5] SVP level 4 medium exertion job; an irrigation worker, a SVP level 5 medium exertion job; and a rotary derrick helper, SVP level 4 heavy exertion job. *See* [#10-2 at 42].

The ALJ then posited the following hypothetical to the VE: assuming a person of the same age, education, and vocational history as Mr. Medina, could such an individual perform any of Mr. Medina's prior work with the following limitations: (1) performing only semiskilled, light work; (2) standing, sitting, and walking only 6 out of an 8-hour work day; (3) pushing and pulling with upper and lower extremities at a light exertional level; (4) no climbing of ladders, ropes, or scaffolds; (5) occasional climbing of stairs and ramps; (6) occasional balancing, stooping, kneeling, crawling, and crouching; and (7) avoiding concentrated exposure to extreme

---

[4] SVP refers to the "time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Vigil v. Colvin*, 805 F.3d 1199, 1201 n.2 (10th Cir. 2015) (citing Dictionary of Occupational Titles, App. C, Sec. II (4th ed., revised 1991); 1991 WL 688702 (G.P.O.). The higher the SVP level, the longer time is needed to acquire the skills necessary to perform the job. Jeffrey S. Wolfe and Lisa B. Proszek, SOCIAL SECURITY DISABILITY AND THE LEGAL PROFESSION 163 (Fig. 10-8) (2003). SVP level 3-4 is associated with semi-skilled work. https://www.ssa.gov/OP_Home/rulings/di/02/SSR2000-04-di-02.html.

[5] Originally, the VE testified that Plaintiff's past employment was a cook, SVP level 7 medium exertion [#10-2 at 42]; however, upon further examination by the ALJ, the VE re-classified Plaintiff's past work experience as a lunch cook with a different SVP and exertional requirement. *See* [*id.* at 42-43].

cold, vibrations, and unprotected heights and manufacturing machinery. [*Id.* at 43-44]. The VE responded that such an individual could perform only Mr. Medina's previous work as a lunch cook. [*Id.* at 44]. The ALJ also asked if any additional jobs existed in the national economy for an individual with the limitations set forth in the above hypothetical. [*Id.*]. The VE testified that the light exertion jobs of small product assembler, SVP level 2; kitchen helper, SVP level 2; and newspaper carrier, SVP level 2 all existed in significant numbers in Colorado as well as nationally. [*Id.* at 44-45]. The VE continued that his testimony was consistent with the Dictionary of Occupational Titles ("DOT") and its companion publications. [*Id.* at 45].

On August 15, 2014, the ALJ issued a decision finding Mr. Medina not disabled under the Act. [#10-2 at 21]. Plaintiff requested Appeals Council review of the ALJ's decision [*id.* at 7], which the Appeals Council denied, rendering the ALJ's decision the final decision of the Commissioner. [*Id.* at 1-3]. Plaintiff sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on June 3, 2016, invoking this court's jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *accord Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) ("[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." (internal citation omitted)). The court may not reverse an ALJ simply because she may have reached a different result based on the record; the question instead is whether there is

substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). However, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court may not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted).

## ANALYSIS

### I.    The ALJ's Decision

An individual is eligible for DIB benefits under the Act if he is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). Supplemental Security Income is available to an individual who is financially eligible, files an application for SSI, and is disabled as defined in the Act. 42 U.S.C. § 1382. An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002). Additionally, the claimant must prove he was disabled prior to his date last insured. *Flaherty*, 515 F.3d at 1069.

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. § 404.1520(a)(4)(v). *See also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. Step one determines whether the claimant is engaged in substantial gainful activity; if so, disability benefits are denied. *Id.* Step two considers "whether the claimant has a medically severe impairment or combination of impairments," as governed by the Secretary's severity regulations. *Id.*; *see also* 20 C.F.R. § 404.1520(e). If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, however, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three. *Williams*, 844 F.2d at 750. Step three "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity," pursuant to 20 C.F.R. § 404.1520(d). *Id.* At step four of the evaluation process, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which defines what the claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751. The ALJ compares the RFC to the claimant's past relevant work to determine whether the claimant can resume such work. *See Barnes v. Colvin*, 614 F. App'x 940, 943 (10th Cir. 2015) (citation omitted). "The claimant bears the burden of proof through step four of the analysis." *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).

At step five, the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account the claimant's RFC, age, education, and work experience.[6] *Neilson*, 992 F.2d at 1120. The Commissioner can meet her burden by the testimony of a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99, 1101 (9th Cir. 1999).

The ALJ found that Mr. Medina was insured for DIB and SSI through December 31, 2013. [#10-2 at 13]. Next, following the five-step evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 20, 2011. [*Id.*]. At step two, the ALJ determined Mr. Medina had the following severe impairments: degenerative changes of the lumbar and cervical spine, osteoarthritis of the knees, obesity, and cognitive disorder. [*Id.* at 13-14]. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Title 20, Chapter III, Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). [*Id.* at 14-15]. The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform unskilled, SVP level 2 light work subject to several limitations [*id.* at 15-19], and, at step four, concluded that Mr. Medina was unable to perform any of his past relevant work, [*id.* at 19]. At step five, considering

---

[6] "A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability. The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to perform. In this context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy. To determine the claimant's 'RFC category,' the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work). *Williams*, 844 F.2d at 751-52. However, if a claimant suffers from both exertional and nonexertional limitations, the decision maker must also consider "all relevant facts to determine whether the claimant's work capability is further diminished in terms of jobs contraindicated by nonexertional limitations." *Id.*

Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. [*Id.* at 20].

On appeal, Mr. Medina raises four issues with the ALJ's decision: (1) the ALJ's improper rejection of Dr. Connolly's restrictions; (2) the ALJ's improper assessment of Plaintiff's physical limitations; (3) the ALJ's improper assessment of Plaintiff's credibility; and (4) the ALJ's improper assessment of the limitations posed by Plaintiff's obesity. [#13 at 4]. The court considers these challenges below.

## II.      The RFC Assessment

In formulating a RFC assessment, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, including the severe and non-severe. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); 20 C.F.R. § 404.1529(a); SSR 96-9p. A claimant's RFC is the most work the claimant can perform, not the least. 20 C.F.R. § 404.1545; SSR 83-10. The ALJ's RFC assessment must be consistent with the record as a whole and supported by substantial evidence. *See generally Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004); SSR 96-8p. If it is, the court will not reverse the ALJ's decision even if it could have reached a different conclusion. *Ellison*, 929 F.2d at 536. Again, the reviewing court may not "reweigh or retry the case." *Flaherty*, 515 F.3d at 1070.

Here, the ALJ concluded that Plaintiff had the RFC to,

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can stand, walk, and sit for 6 out of 8 hours each day; can push and pull with the upper and lower extremities within the exertional range of light work; cannot climb ladders, ropes, or scaffolds; can occasionally climb stairs and ramps; can occasionally balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to extreme cold, vibrations, and hazards such as unprotected heights and unprotected manufacturing machinery; and is limited to unskilled work with an svp of 2.

[#10-2 at 15]. Plaintiff challenges the ALJ's RFC assessment on several grounds.

## A.    Weighing the Opinion Medical Evidence

In assessing a claimant's RFC, the ALJ must address medical source opinions. Generally, the opinion of a treating source is entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). *See also* 20 C.F.R. § 404.1527(b), (c); *Pacheco v. Colvin*, 83 F. Supp. 3d 1157, 1161 (D. Colo. 2015). The ALJ is required to apply the following factors when she declines to give the treating source's opinion controlling weight:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing 20 C.F.R. § 416.927(c)(2)(i)-(ii), (c)(3)-(c)(6)). *See also* 20 C.F.R. § 404.1527(c). In all cases, an ALJ must "give good reasons in [the] notice of determination or decision" for the weight assigned to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2). *See also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing SSR 96–2p, 1996 WL 374188, at *5; *Doyal v. Barnhart,* 331 F.3d 758, 762 (10th Cir. 2003)). "[I]f the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." *Watkins*, 350 F.3d at 1300 (internal quotations and citations omitted).

First, Mr. Medina challenges the ALJ's decision to give the opinion of Dr. Connolly little weight. [#13 at 7]. Specifically, Plaintiff argues that the ALJ's proffered reasons for rejecting Dr. Connolly's opinion are erroneous and not supported by substantial evidence. [*Id.*at 8-12].

Defendant responds that the ALJ found many inconsistencies between Dr. Connolly's imposition of severe physical limitations and the objective medical evidence, and that Plaintiff improperly requests that this court reweigh the evidence. [#14 at 8-9, 12-14]. Plaintiff maintains, however, that objective medical evidence supports Dr. Connolly's restrictions; thus, substantial evidence does not support the ALJ's reasons for rejecting those restrictions. [#17 at 1-7].

Dr. Connolly indicated on a RFC assessment form that Mr. Medina could lift only 10 pounds for up to one-third of an 8-hour workday. [#10-8 at 315]. Dr. Connolly also noted that Plaintiff could sit for only 20 minutes at a time, and could sit for only 3 hours out of an 8-hour workday. [*Id.*]. Similarly, Dr. Connolly reported that Plaintiff's back issues interfered with his ability to walk and stand, that Plaintiff could be on his feet for less than 30 minutes at a time, and that he could be on his feet for only 3-4 hours per 8-hour workday. [*Id.*]. Lastly, Dr. Connolly opined that Plaintiff could rarely stoop, squat, kneel, or crawl; that he needed to lie down for 90 minutes every 4 hours or so; and that his impairments have been this severe since 2012. [*Id.* at 316]. Accordingly, Dr. Connolly completed a "Med-9 form" indicating that Plaintiff was disabled. [*Id.* at 318-19].

The ALJ, however, gave Dr. Connolly's opinions little weight, despite his conclusion that Dr. Connolly was Plaintiff's treating physician and treated Plaintiff on a regular basis since January 2013 (after the alleged onset and date last insured). [#10-2 at 18]. This was because Dr. Connolly's opinions were "not consistent with her own exam findings or the exam findings of the consultative examiner [Dr. Mark Osborne]"; "[n]or [were] they consistent with the objective diagnostic evidence, which shows no evidence of radiculopathy and only mild to moderate degenerative changes of the lumbar spine"; nor were her opinions "clearly explained or persuasively reasoned." [*Id.*]. Plaintiff challenges each of these reasons.

To start, while acknowledging that the ALJ concluded that several objective findings may account for Plaintiff's knee, neck, and back pain, Mr. Medina contends that there is no evidence to suggest that Dr. Connolly's opinions were inconsistent with her exam findings. [#13 at 17-18]. Relatedly, Mr. Medina avers that the ALJ improperly focused on the negative results of the EMG test in discrediting Dr. Connolly's opinions; however, the majority of the objective evidence cited by the ALJ supports Dr. Connolly's restrictions. [*Id.* at 19-20]. However, the ALJ also considered the objective medical evidence, including Dr. Connolly's treatment notes, which did not support severe restrictions on Plaintiff's physical functionality. *See* [#10-2 at 17]. Specifically, the ALJ considered hospital records from Keefe Memorial Hospital, dated January 29, 2013 to March 25, 2014. [*Id.* at 17; #10-8 at 229-303]. As the ALJ noted, these records, while corroborating a degree of physical limitations, did not unequivocally support the severe restrictions imposed by Dr. Connolly. For example, several treatment notes and exams reported negative straight leg raise tests; normal range of motion in Plaintiff's lower back and knees; normal gait and ambulation; normal sensation; normal reflexes; normal strength of all extremities; and no evidence of any herniated disk. *See, e.g.*, [#10-8 at 229-30, 231-32, 233, 236, 238, 240, 242, 252, 256, 259, 266, 268, 274, 277, 283, 289, 293, 295, 301]. Further, the court respectfully concludes that the ALJ did not rely solely on the negative EMG test results in concluding that Dr. Connolly's restrictions were inconsistent with her own findings or the record as a whole; rather, this was but one reason in reaching this conclusion. Thus, because the record could support a finding that Plaintiff had severe physical restrictions or a finding that such restrictions were not as severe as alleged, the ALJ "was entitled to resolve such evidentiary conflicts and did so." *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016).

Next, Plaintiff argues that the inconsistencies between Dr. Connolly's and Dr. Osborne's opinions actually corroborates Dr. Connolly's severe restrictions given that the ALJ discredited Dr. Osborne's opinion that Plaintiff had no physical limitations. [*Id.* at 18-19]. While true that the ALJ discredited Dr. Osborne's opinions that Mr. Medina had no physical limitations, it remains the ALJ's responsibility to resolve any conflicts between the two physicians' opinions. *See Smith v. Colvin*, 821 F.3d 1264, 1268 (10th Cir. 2016). Here, the ALJ did just that. *See* [#10-2 at 18-19]. The ALJ explained that Dr. Osborne's opinion was entitled to limited weight because it was rendered after a single exam, while other providers who had more of a history of treating Mr. Medina (like Dr. Connolly) reported a greater degree of physical limitation than Dr. Osborne. [*Id.*]. And, although the ALJ discredited Dr. Osborne's opinion, this fact alone does not support Mr. Medina's argument that the ALJ was required to accept Dr. Connolly's severe restrictions, and the court concludes that the ALJ did not err by picking a middle ground without adopting either opinion. *Thurston v. Colvin*, No. 15-1378-SAC, 2016 WL 6905901, at *5 (D. Kan. Nov. 22, 2016) ("Based on the . . . conflicting medical and medical opinion evidence, the court finds no clear error in the ALJ's evaluation of the medical evidence or in the ALJ's RFC findings. The court will not reweigh the evidence.").

Lastly, Plaintiff argues that the ALJ should have considered Dr. Connolly's opinions in conjunction with her own treatment notes and exams or, at the least, the ALJ should have "recontacted [Dr. Connolly] for clarification before rejecting her opinion." [*Id.* at 20-21]. Typically, an ALJ must consider a treating physician's opinions as a whole, *i.e.*, through hospital records, laboratory tests, and medical treatment notes, *Williams v. Bowen*, 844 F.2d 748, 758-59 (10th Cir. 1988), and the court concludes that the ALJ properly did so here. This is because, as discussed *supra*, the ALJ specifically found inconsistencies between Dr. Connolly's opinions,

her treatment notes, and the objective medical evidence as a whole. As mentioned, the ALJ was responsible for resolving those inconsistencies. *Allman*, 813 F.3d at 1333. Similarly, the ALJ was not required to recontact Dr. Connolly for clarification on her opinions; this duty is triggered only upon a finding that the information the treating physician provided is "inadequate." *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001). Here, the ALJ concluded that Dr. Connolly did not clearly explain or persuasively reason her opinions, given the inconsistencies with the record as a whole. [#10-2 at 18]. The ALJ did not conclude, however, that Dr. Connolly's treatment notes were too inadequate to form an opinion. "Given the nature and limits of our review, and given as well the detailed reasons offered by the ALJ for rejecting Dr. [Connolly's] opinion, we do not second-guess his decision." *White*, 287 F.3d at 909 (holding that the ALJ did not err in discrediting the plaintiff's treating physician's opinions where the ALJ concluded that the treating physician failed to explain the inconsistencies between the restrictive functional assessment and the negative diagnostic test results); *see also Ward v. Berryhill*, No. 16-CV-00820-RBJ, 2017 WL 1324895, at *3 (D. Colo. Apr. 7, 2017).

### B.     The ALJ's RFC Assessment

Second, Mr. Medina asserts that substantial evidence does not support the ALJ's RFC assessment that Plaintiff can perform light work with certain postural limitations. [#13 at 22; #17 at 7]. Mr. Medina contends that, because the record contained conflicting medical evidence, the ALJ was required to retain an expert to assist him in interpreting that evidence. [#13 at 23-24; #17 at 8]. According to Plaintiff, without an expert, the ALJ impermissibly substituted his own lay opinion for that of a treating physician [#13 at 25], and impermissibly considered only negative exam findings that supported his RFC assessment, [#17 at 8]. Defendant responds that

the ALJ properly explained how he determined Plaintiff's RFC, based on the evidence of record. [#14 at 14]. The court respectfully agrees with Defendant.

In crafting Plaintiff's RFC, the ALJ considered Mr. Medina's testimony at the August 6 hearing, the objective medical evidence (including positive and negative exam findings), Mr. Medina's treatment history, and the medical source opinions. *See* [#10-2 at 16-19]. Regarding the objective medical evidence, the ALJ began with a summation of several diagnostic exams performed between December 2007 and April 2014. These included a December 2007 MRI of the lumbar spine that revealed mild L2-3 central canal stenosis and moderate left foraminal narrowing; January 2013 X-rays of (1) the knees that revealed osteoarthritis of the femoropatellar joint, (2) the cervical spine that revealed arthritic changes of the facet joint, T2-3, and (3) the lumbar spine that revealed findings consistent with diffuse idiopathic sclerosing hypostasis; August 2013 X-rays of the lumbar spine that revealed mild scoliosis and moderate lumbar spondylosis; an October 2013 MRI of the lumbar spine that revealed some areas of spinal stenosis; a February 2014 MRI of the lumbar spine that revealed borderline stenosis at L2-3 and L3-4 with mild disc bulging at multiple levels; and an April 2014 EMG test that revealed no abnormalities in Plaintiff's lower extremities. [#10-2 at 16-17; #10-7; #10-8]. Additionally, the ALJ considered Mr. Medina's exam results that revealed paravertebral tenderness of the lower back, limited range of motion in the lower back and knees, and some positive straight leg raise tests. [#10-2 at 17]. Though recognizing that this evidence is "indicative of some amount of difficulty lifting and carrying heavy object or engaging in frequent postural activities[,]" the ALJ also found that the objective medical evidence contained several negative exam results that did not corroborate the severe physical limitations alleged. [*Id.*].

To start, the decision to retain a medical expert is within the ALJ's discretion. *See* 20 C.F.R. § 404.1529(b). However, an ALJ may not substitute his judgment for that of a medical source based on the ALJ's conclusion that Plaintiff's complaints are not credible. *See e.g.*, *Williams v. Colvin*, No. 13-CV-1423-MSK, 2015 WL 4237593, at *10 (D. Colo. July 14, 2015) (collecting cases) (quoting *Valdez v. Barnhart*, 62 F. App'x 838, 842 (10th Cir. 2003)); *accord Neydavoud v. Astrue*, 830 F. Supp. 2d 907, 913 (C.D. Cal. 2011) ("The ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert." (internal brackets, quotations, and citation omitted)). Nor may an ALJ reject a treating source's opinions based on her own speculation or lay opinion. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (quotations and citation omitted). Here, however, the ALJ committed no such error.[7] Rather, as discussed *supra*, the ALJ proffered an adequate explanation for rejecting Dr. Connolly's opinion, and determined Plaintiff's RFC based on the evidence of record. *See Mullins v. Comm'r of Soc. Sec.*, No. 1:15-CV-104, 2015 WL 9854828, at *8 (S.D. Ohio Dec. 21, 2015) ("An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rending an RFC finding." (internal quotations and citation omitted)). Further, the court respectfully concludes that the ALJ did not err by interpreting the conflicting evidence, despite Mr. Medina's vague assertions that the medical evidence in this case was complex though not directing the court to what evidence the ALJ misinterpreted. *See id.* at *9 ("Plaintiff points to no error in the ALJ's recitation or interpretation of the medical evidence that she reviewed, nor does he identify any specific 'raw data' that he believes was misinterpreted.").

---

[7] The case Plaintiff cites in support of his argument is inapposite. [#13 at 25]. In *Thomas v. Barnhart*, the court held that the ALJ erred by discrediting the medical opinion of a consulting psychologist, because the ALJ rejected that opinion "*solely* for the reason that it was based on Mrs. Thomas's responses" to the psychologist's examination, which "impermissibly substitutes [the ALJ's] judgment for that of [the psychologist]." 147 F. App'x 755, 759-60 (10th Cir. 2005). Here, the ALJ did not reject Dr. Connolly's opinions for this (or a similar) reason.

Relatedly, Plaintiff contends that the ALJ "did not resolve the conflict in favor of either [Dr. Connolly's or Dr. Osborne's opinions];" rather, the ALJ "determine[d] the meaning of the medical findings on a layman's basis." [#13 at 26]. Again, the court respectfully concludes that the ALJ did not commit reversible error in adopting physical limitations within the bookends of Dr. Connolly and Dr. Osborne's restrictions. *See Smith*, 821 F.3d at 1268. Indeed, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Asture*, 682 F.3d 1285, 1288 (10th Cir. 2012) (internal quotations and citations omitted). Moreover, although it may be inappropriate for the ALJ to reach an RFC assessment without expert medical assistance when his determination seriously conflicts with the medical opinions, *Wells*, 727 F.3d at 1072, the court concludes that this is not the case here.

Accordingly, the court concludes that substantial evidence supports the ALJ's RFC assessment, and that the ALJ did not commit reversible error by failing to retain a medical expert. Further, contrary to Plaintiff's contention [#17 at 8], the court concludes that the ALJ adequately explained his RFC determination and did not "pick and choose" only evidence that supported his finding. *See Chapo*, 682 F.3d at 1288 ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question.").

### C.    Credibility

"'Credibility determinations are peculiarly the province of the finder of fact' and the Tenth Circuit will uphold such determinations, so long as they are supported by substantial evidence." *Ruh v. Colvin*, No. 13-CV-01255-PAB, 2015 WL 1517392, at *2 (D. Colo. Mar. 30, 2015) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). "Credibility determinations should not be conclusory, but instead 'closely and affirmatively linked' to evidence in the

record." *Oliva v. Colvin*, No. 13-CV-02495-PAB, 2015 WL 5719645, at *7 (D. Colo. Sept. 30, 2015) (quoting *Kepler*, 68 F.3d at 391)). In addition to considering the objective medical evidence, the ALJ must also consider several factors including, *inter alia*, the claimant's daily activities. *See* SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996); *accord Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010). However, the ability to perform daily activities on a sporadic basis does not equate to the claimant being able to engage in substantial gainful activity; nor may an ALJ rely on minimal daily activities to find that the claimant does not suffer from disabling pain. *Proctor v. Astrue*, 665 F. Supp. 2d 1243, 1256 (D. Colo. 2009). Mr. Medina challenges the ALJ's credibility assessment on several grounds.

First, Mr. Medina argues that the ALJ discredited Plaintiff's testimony regarding the severity of his ailments, because the ALJ erroneously concluded that a negative EMG test equated to minimal limitations on lifting and carrying moderately heavy objects and no limitations on standing or walking. [#13 at 27-29; #17 at 9-10]. Instead, the ALJ should have considered the positive exam and diagnostic results, as well as Plaintiff's obesity and knee problems, which account for limitations consistent with his testimony. [*Id.* at 27-28]. However, the court respectfully agrees with Defendant that the ALJ properly considered the inconsistencies between Plaintiff's testimony and the objective medical evidence when finding Plaintiff not entirely credible. [#14 at 11]. Nor does the court find it reversible error that the ALJ characterized the medical evidence as weak [#13 at 31; #17 at 9-10], as it is the ALJ's responsibility to weigh the medical and non-medical evidence. And, as Plaintiff recognizes [#13 at 28-29], there is conflicting medical evidence concerning the severity of Plaintiff's ailments, a conflict the ALJ rightfully resolved. *See Allman*, 813 F.3d at 1333. In doing so, the ALJ concluded that, while some evidence corroborated Mr. Medina's testimony, other evidence

(including the negative EMG test) did not support such severe limitations. [#10-2 at 17]. However, contrary to Plaintiff's assertion, the ALJ did not conclude that Plaintiff could walk or stand on an unlimited basis; rather, the ALJ concluded that Plaintiff could do so with some limitations as compared to his testimony. [*Id.*]. Further, to the extent Mr. Medina contends that the ALJ erred by not considering whether any explanations existed to account for the variation in positive and negative exam results, the court notes that this is but one factor an ALJ may utilize when determining a claimant's credibility, but it is generally utilized to account for inconsistencies in "the individual's own statements" to treating sources, a finding the ALJ did not render. *See* SSR 96-7P, 1996 WL 374186, at *5.[8] Thus, the ALJ found that the evidence was only partially consistent with his testimony, and, because the ALJ affirmatively linked his determination to substantial evidence, the court will not upset that determination. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (quotations and citations omitted).

Next, Mr. Medina argues that the ALJ erroneously concluded that Plaintiff's testimony was inconsistent with his treatment history, because his course of treatment actually supports his allegations of disabling pain and there is no evidence that Plaintiff would benefit from the use of a cane or chiropractic treatment. [#13 at 30; #17 at 11]. Here, the ALJ concluded that Plaintiff's main course of treatment involves pain medications (Percocet and Tramadol) as well as Toradol injections. [#10-2 at 17]. The ALJ also noted that Plaintiff has reported to the emergency room for back pain, but that he does not use a cane to ambulate and does not pursue other modalities of treatment such as massage or chiropractic therapy. [*Id.*]. The ALJ then concluded that

---

[8] On March 28, 2016, SSR 16-3p took effect and superseded SSR 96-7p, "eliminating the use of the term 'credibility.'" *See* TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS, *available at* https://www.ssa.gov/OP_Home/rulings/di/01/SSR2016-03-di-01.html. Because the ALJ issued her decision in August 2014, the court analyzes her credibility determination under SSR 96-7p.

Plaintiff's treatment history has been stable and indicates some control of his symptoms. [*Id.*]. Ultimately, Plaintiff invites the court to reweigh the evidence that the ALJ relied on in reaching this conclusion, but the court will not substitute its judgment for the ALJ's. *See Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000). Further, given the ALJ's discussion of other evidence that supports his credibility determination, the court respectfully concludes that any error in assessing Plaintiff's treatment history is harmless. *Cf. Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (approving harmless-error analysis when "based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.").

Lastly, Mr. Medina contends that the ALJ imposed an improper burden on Plaintiff by stating that he "could not verify the limitations of daily activities with any degree of certainty." [#13 at 30; #17 at 10]. Plaintiff argues that if this is the proper standard, no "testimony of something as subjective as symptoms could ever be verified to any degree of certainty." [#13 at 31]. Plaintiff also objects to the ALJ's conclusion that "it is difficult to attribute that degree of limitation [to Plaintiff's activities] to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision." [*Id.*]. However, the court finds these arguments unavailing. In *Wall v. Astrue*, the plaintiff made an identical argument based on similar language used by the ALJ, but the court held that this language did not impose any improper standard on the plaintiff. 561 F.3d 1048, 1070 (10th Cir. 2009). "Rather, the ALJ's statement was merely a common sense observation that the ALJ would not treat [Ms. Wall's] testimony as 'strong evidence' of her disability due to his prior determination that [Ms. Wall's] testimony was not 'fully credible.' . . . [Ms. Wall] simply misconstrues the ALJ's comment in suggesting otherwise." *Id.* Here, as in *Wall*, the

court concludes that the ALJ rendered this conclusion "subsequent to, and thus in light of," his adverse determination of Mr. Medina's credibility, and that the ALJ affirmatively linked that determination to substantial evidence. *Id.*; *see also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) ("[S]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, he need not make a formalistic factor-by-factor recitation of the evidence. . . . [C]ommon sense, not technical perfection, is [the court's] guide." (internal quotations and citations omitted)).

### D.    Obesity

"Social Security Ruling (SSR) 02-1p requires an ALJ to consider the effects of obesity when assessing RFC, including the fact that 'the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.'" *DeWitt v. Astrue*, 381 F. App'x 782, 785 (10th Cir. 2010) (quoting SSR 02-1p, 2000 WL 628049, at *1). In doing so, the ALJ "will not make assumptions about the severity or functional effects of obesity combined with other impairments because obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." *Hamby   v. Astrue*, 260 F. App'x 108, 112 (10th Cir. 2008) (internal brackets, quotations, and citation omitted). Rather, the ALJ must base his evaluation on the information in the record. *Id.*

Here, Plaintiff contends that, although the ALJ concluded that Plaintiff's obesity, in combination with his other impairments, significantly limited his ability to do work activities [#10-2 at 16], the ALJ's RFC assessment never explained those limitations. [#13 at 31-32; #17 at 11-12]. Plaintiff continues that a proper assessment "may explain why plaintiff has trouble lifting more than ten pounds and trouble standing for very long." [#13 at 33]. Respectfully, the

court concludes that the ALJ adequately considered Mr. Medina's obesity when formulating his RFC.

At step 2, the ALJ concluded that Plaintiff's obesity was a severe impairment.  [#10-2 at 13].  Then, while explaining Plaintiff's RFC, the ALJ stated that Mr. Medina's Body Mass Index ("BMI")[9] is 35, which meets the criteria for obesity under the National Institute of Health's guidelines.  [*Id.*].  The ALJ concluded that, while Plaintiff's obesity alone is not disabling, it significantly limits his ability to do basic work activities when considered in combination with his other ailments.  [*Id.*].

Plaintiff takes issue with the fact that the ALJ's RFC assessment does not again mention obesity, and he claims that this is reversible error.  However, "there is no requirement that [obesity] be discussed in a particular manner or at a particular time in a disability decision," the ALJ is required only to consider it.  *See Love v. Colvin*, No. CIV.A. 14-1078-JWL, 2015 WL 1530599, at *2 (D. Kan. Apr. 6, 2015).  Moreover, Plaintiff cites to no medical evidence (nor could the court find any) that the ALJ failed to consider that suggests that Mr. Medina's obesity resulted in additional functional limitations or exacerbated other impairments.  *See Smith v. Colvin*, 625 F. App'x 896, 899 (10th Cir. 2015) (declining to impose a requirement on the ALJ to note the absence of any evidence that a claimant's obesity resulted in additional functional limitations while discussing the evidence regarding the claimant's RFC).  Similarly, Plaintiff did not testify to any effects obesity had on his ability to stand, walk, stoop, or crouch; rather, Plaintiff attributed his difficulties with these postural activities to his back and knees.  *See* [#10-2 at 35-36]; *see also Rose v. Colvin*, 634 F. App'x 632, 637 (10th Cir. 2015) (affirming the ALJ's RFC assessment, despite Ms. Rose's argument that the ALJ failed to consider her obesity, when

---

[9] BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters ($kg/m^2$).

the record reflected that her injuries affected her postural activities, not her obesity). Further, despite Plaintiff's argument that a proper consideration of his obesity *may* explain why he struggles lifting over 10 pounds or standing for very long [#13 at 33], "the ALJ cannot *assume* a functional deficit." *Smith v. Colvin*, 625 F. App'x at 899 (emphasis in original).

## CONCLUSION

For the reasons stated herein, the court hereby **AFFIRMS** the Commissioner's final decision.


DATED: May 8, 2017                                  BY THE COURT:

                                                    s/Nina Y. Wang
                                                    Nina Y. Wang
                                                    United States Magistrate Judge